```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION

AMON DEAN RICHARDS,

                    Plaintiff,

vs.                                  Case No. 2:07-cv-762-FtM-29DNF

DR. HEMPHILL, D. COATES, A.L.
JOHNSON, and SECRETARY, DOC,

                    Defendants.
_____
```

**OPINION AND ORDER**

**I.**

This matter comes before the Court upon review of the Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment (Doc. #38, Mot. SJ.), filed on behalf of Defendants Hemphill and Johnson on February 10, 2009.[1] Defendant Coates filed a "Joinder in Defendants' Motion to Dismiss" (Doc. #47, Coates' Mot.) on March 9, 2009.[2] Defendant Secretary of the Department of Corrections filed a "Motion to Adopt and Incorporate the Motion to Dismiss" (Doc. #49, Sec'y Dept. Corr. Mot.) on March 16, 2009. Plaintiff filed a response in opposition to the Defendants' motion for summary judgment (Doc. #48, Response) on

---

[1] On February 13, 2009, the Court entered an Order telling Plaintiff that the Court may treat the motion as one for summary judgment and directed Plaintiff to file a response accordingly. See Doc. #40.

[2] Defendant Coates previously filed an Answer (Doc. #33). Thus, to the extent Coates joins the Defendants' motion, she files a motion for summary judgment.

March 9, 2009. After review of the record, along with applicable law, the Court finds Defendants' motions due to be granted and this case dismissed.

**II.**

Plaintiff filed his *pro se* 42 U.S.C. § 1983 Complaint (Doc. #1, Complaint) while incarcerated at Charlotte Correctional Institution. See Complaint. Plaintiff alleges that the defendant doctor Hemphill (hereinafter "Hemphill") violated his constitutional rights by not providing the topical treatment called Closetasol[3] that the doctor prescribed for Plaintiff's scalp condition. See generally Complaint.

On October 2, 2006, Plaintiff submitted a sick call request form, requesting an appointment with the medical department because he had "scalp lesions," which he also identified as a reoccurring condition that he has had for years. Complaint at 15; Defs' Mot. SJ at 2. On October 4, 2006, Doctor Hemphill examined Plaintiff, noted that Plaintiff had previously been prescribed Keflect and Hydrocortosine Cream for the scalp lesions, and found that Plaintiff had 7-8 lesions, each less than 1/2 centimeter in diameter with no bleeding or drainage associated with the lesions. Complaint at 15; Defs' Exhs. B, C1. Hemphill determined that Plaintiff's condition was Dermatitis of the scalp and prescribed Selenium Sulfate Shampoo and Hydrocortisone Cream. Defs' Exhs. B,

---

[3]Plaintiff calls this prescription "Clobetasol." Defendants spell the prescription "Closetasol."

D. Other than Plaintiff's allegations, the record contains no medical notes or records indicating that the doctor prescribed Closetasol for Plaintiff.

The first grievance in the record is dated November 13, 2006, approximately one month after Plaintiff's visit to the medical department, and is addressed to the warden or assistant warden. In this formal grievance, Plaintiff complained that he did not receive the Closetasol topical solution. Plaintiff states that he saw the doctor on October 5, 2006 and the doctor informed Plaintiff that he would receive shampoo and Closetasol topical solution as treatment since it helped in the past. Plaintiff also states in this grievance that he had previously submitted a grievance to the medical department on October 7, 2006. Although the grievance to the medical department does not appear to be a part of the record, Plaintiff states that the medical department responded to the grievance on October 10, 2006, stating that the Closetasol had been ordered and Plaintiff would receive it soon. Plaintiff received a response, denying his formal grievance on November 21, 2006. In response, Defendant Coates explained to Plaintiff that he never received the Closetasol because the doctor did <u>not</u> order it. Instead, the doctor ordered a different cream, which Plaintiff received. Pl's Exh. Doc. #1-2; Defs' Exh. at E.

On December 4, 2006, Plaintiff appealed the denial of his institutional grievance to the Office of the Secretary of the

Florida Department of Corrections. Defs' Exh. G. In his appeal, Plaintiff stated:

> Grievant states that institution response is false and insufficient. Grievant states that upon seeing the doctor on 10/5/06, the doctor specifically stated that he would order the Clobetasol topical solution since it worked for me in the past, so the doctor would be incorrect to order something different when I clearly explained to him that Clobetasol topical solution worked for my condition in the past. Grievant further states that respondents falsely states that grievant received a cream without providing proof that he signed for receiving a cream, as is procedure here at Charlotte, [sic] for an inmate to sign for medicinal products that was [sic] ordered by pharmacy.

Defs' Exh. G.

On February 15, 2007, the Office of the Secretary responded to Plaintiff's grievance appealing the institution's decision. Defs' Exh. H. The Secretary denied Plaintiff's appeal, noting that the office "carefully evaluated" Plaintiff's records and contacted the institution. The Secretary determined that Doctor Hemphill's responses appropriately addressed Plaintiff's medical issues and encouraged Plaintiff to access sick call if he experienced medical problems. Id.

Plaintiff attributes liability on warden A.L. Johnson (hereinafter "Johnson") for failing to investigate the allegations concerning Plaintiff's medical treatment, or lack thereof, brought to light by his inmate grievances. Id. at 13. Plaintiff alleges that D. Coates, the Health Services Administrator (hereinafter "Coates"), violated his constitutional rights when she "lied" in response to his inmate grievance by writing that Plaintiff received

his medication.  Id. at 1.  Plaintiff claims James McDonough, the former Secretary of the Department of Corrections (hereinafter "McDonough") violated his rights by failing to respond to his inmate grievance.[4]  Id.

Although Walter McNeil, the current Secretary for the Department of Corrections, filed a response to the Complaint, it appears that Plaintiff did not intend on stating a claim against the Secretary of the Department of Corrections in his official capacity.[5]  See Complaint.  Nevertheless, liberally construing the Complaint, the Court will address any claims that Plaintiff could have pursued against the Secretary.  Defendant Coates, as the Health Services Administrator, neither provided direct patient care to the inmates, nor did she examine or administer any of Plaintiff's treatments.  Coates Mot. at 2.  Doctor Hemphill, works for Wexford Health Inc., and provides medical services to the inmates at Charlotte Correctional Institution.  Defs' Mot. SJ. at 2.

---

[4]Service of process remains uneffectuated on the former Secretary of the Department of Corrections, James R. McDonough. The current Secretary, Walter McNeil, has filed a motion to adopt and incorporate the motion to dismiss. (Doc. #49.)

[5]On March 16, 2009, Plaintiff filed a "Motion to Service Process" (Doc. #50) requesting that the Court effect service of process on James McDonough because he was the acting Secretary at the time concerning the matter *sub judice*.  Id.

**III.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). If there is a conflict in the evidence the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003). Conclusory allegations based on subjective beliefs, however, are insufficient to create a genuine issue of material fact. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000). In the summary judgment context, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney. Loren v. Sasser, 309 F.3d 1296, 1301 (11th Cir. 2002).

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights. In any § l983 action, the initial inquiry must focus on whether the two essential elements to a § l983 action are present:

> (1) whether the person engaged in the conduct complained of was acting under color of state law; and (2) whether the alleged conduct deprived a person of rights, privileges or immunities guaranteed under the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by, Daniels v. Williams, 474 U.S. 327 (1986); Burch v. Apalachee Community Mental Health Services, Inc., 840 F.2d 797, 800 (11th Cir. 1988), aff'd by, Zinermon v. Burch, 494 U.S. 113 (1990).

Duke v. Massey, 87 F.3d 1226, 1231 (11th Cir.), reh'g and suggestion for reh'g en banc denied, 98 F.3d 1355 (11th Cir. 1996); Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995).

**IV.**

None of the Defendants contest that they fall within the meaning of a "state" actor pursuant to § 1983. Plaintiff proceeds against the Defendants in only their individual capacities. Complaint at 1; Response at 1. Thus, to the extent Defendants raise Eleventh Amendment immunity to any official capacity claims, their argument is moot. Defendants Doctor Hemphill and Warden Johnson move for the entry of summary judgment in their favor, arguing that Plaintiff has not demonstrated that they acted with deliberate indifference to a serious medical condition. Mot. SJ.

at 1.  Defendants Coates and Secretary McNeil joins the argument. Docs. #47, #49.  Defendants all raise Qualified Immunity as a defense to all claims against them in their individual capacities. See Mot. SJ; Docs. #47, #49.  Defendant Johnson alone argues that Plaintiff has not exhausted his administrative remedies with respect to his claims against him because he did not name Johnson in any of the grievances or appeals.  Id. at 9.

**Exhaustion of Administrative Remedies**

At the outset, the Court must address whether Plaintiff exhausted his administrative remedies with respect to Defendant warden Johnson.  Johnson asserts that Plaintiff did not exhaust his administrative remedies with respect to this claim against him because Johnson's name is not specifically mentioned on any of the grievances.  Mot. SJ. at 9.  In response, Plaintiff argues that the individuals later sued need not be specifically named in the grievance.  Response at 8 (citing Jones v. Brock, 127 S. Ct. 910)).  Plaintiff asserts that he did exhaust his administrative remedies. Id.

The Prison Litigation Reform Act (hereinafter "PLRA") provides that "no action shall be brought with respect to prison conditions under [§ 1983] by a prisoner. . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they involve excessive force or

some other wrong doing.  Woodford v. NGO, 126 S. Ct. 2378, 2382 (2006); Porter v. Nussle, 534 U.S. 516 (2002); Booth v. Churner, 532 U.S. 731, 741 (2001) (finding that Congress has mandated exhaustion of administrative remedies, regardless of whether the relief sought--i.e. monetary damages--is available through the administrative procedures).

"[T]he PLRA exhaustion requirement requires **full** and **proper** exhaustion."  Woodford, 126 S. Ct. at 2386 (emphasis added)(explaining that an inmate did not properly exhaust administrative remedies when a jail dismissed a grievance because the inmate had missed the deadlines set up by the jail's grievance procedures).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define boundaries of proper exhaustion."  Bock, 127 S.Ct. at 923.

"Exhaustion is no longer left to the discretion of the district court, but is mandatory."  Woodford, 126 S. Ct. at 2382; Booth, 532 U.S. at 739; see also Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).  Inmates, however, "are not required to specially plead or demonstrate exhaustion in their complaints."  Jones, 127 S. Ct. at 921.  Rather, pursuant to the PLRA, failure to exhaust administrative remedies is an affirmative defense that

-9-

defendant must plead and prove. Id. at 914. The claim that an inmate failed to exhaust the administrative remedies "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Bryant v. Rich, 530 F.3d 1368, 1376 (11th Cir. 2008)(citations omitted).

Although Defendant Johnson argues that Plaintiff should have specifically named him in the grievances in order to properly exhaust his administrative remedies, Johnson does not cite to any applicable portion of the grievance procedures set forth in the Florida Administrative Code that requires an inmate specifically name the individuals later sued in the grievance(s). See Jones, 127 S. Ct. at 921. As stated above, under the PLRA an inmate is not required to specifically identify each defendant in the grievance in order to properly exhaust his or her administrative remedies. The purpose of the grievance is to apprise the institution of the inmate's issue and allow an opportunity for the institution to correct the issue, if deemed appropriate. Based on a review of Defendant Johnson's argument and the grievances, the Court finds that Plaintiff has properly exhausted his administrative remedies and will address the merits of the case.

**Eighth Amendment**

"[D]eliberate indifference to [the] serious medical needs of [a] prisoner [ ] constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)(quoting Estelle v. Gamble, 429

U.S. 97, 104 (1976)); Campbell v. Sikes, 169 F.3d 1353 (11th Cir. 1999). In order to state a claim for a violation under the Eighth Amendment, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. This showing requires a plaintiff to satisfy an objective and a subjective inquiry. Farrow, 320 F.3d at 1243 (citing Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000)).

A plaintiff must first show that he had an "objectively serious medical need." Id. "[A] serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). In either situation, "the medical need must be 'one that, if left unattended, pos[es] a substantial risk of serious harm." Id. (citing Taylor, 221 F.3d at 1258)(alteration in original); see also Andujar v. Rodriquez, 486 F.3d 1199, 1203 (11th Cir. 2007) (finding that a condition involving more than "superficial" wounds, affecting ability to walk, and pain that caused crying was objectively, sufficiently serious), cert. denied sub. nom, 128 S. Ct. 385 (2007).

Second, a plaintiff must establish that a defendant acted with "deliberate indifference" by showing: (1) subjective knowledge of

a risk of serious harm (i.e., both awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and the actual drawing of the inference); (2) disregard of that risk; and (3) conduct that is more than gross negligence. Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005). Inadvertence or mere negligence in failing to provide adequate medical care does not rise to a constitutional violation. Farrow, 320 F.3d at 1243. Rather, "medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)).

The Supreme Court has stated that decisions such as whether an x-ray, additional diagnostic techniques, or other forms of treatment are indicated are "[c]lassic example[s] of matters for medical judgment." Estelle, 429 U.S. at 107. The course of treatment chosen by a medical official would appear to be such "a classic example of a matter for medical judgement." Id. Thus, no constitutional violation exists where an inmate and a prison medical official merely disagree as to the proper course of medical treatment. Harris, 941 F.2d at 1505.

In their motion, Defendants Hemphill and Johnson first argue that Plaintiff's scalp condition does not constitute a serious medical condition. Mot. SJ. at 13-14. Defendants note that

Plaintiff had the condition "for years" and when Hemphill examined Plaintiff, he found no bleeding or drainage associated with the lesions. Id. at 13. Defendants further point out that Plaintiff's medical record do not indicate that Plaintiff sought follow-up treatment for his scalp after his medical visit on October 4, 2006. Id. Defendants point out that at least one other district court has determined that a scalp condition does not constitute a serious medical need. Id. at 15 (citing Cranford v. Compton, Case No. 1:04-cv-783-LG-JMR, 2006 WL 2805348 (S.D. Miss. Sept. 5, 2006)(finding a scalp infection did not constitute a serious medical condition and was not life threatening).

Based on the foregoing, specifically the medical documents and notes by the doctor, Plaintiff's scalp condition does not appear to constitute a serious medical condition. Doctor Hemphill diagnosed Plaintiff with Dermatitis of the scalp, noting that Plaintiff's scalp had 7-8 lesions, 1/2 centimeter in diameter, with no bleeding or drainage associated with the lesions. Defs' Exh. B. The record does not support a finding that this scalp condition, if left untreated, would pose a substantial risk of serious medical harm.

Even if the Court were to assume *arguendo* that Plaintiff's scalp condition did constitute a serious medical condition, the record evidence shows, without contradiction, that Defendants did not act with deliberate indifference to Plaintiff's medical condition. Doctor Hemphill did not ignore Plaintiff's medical complaints. Indeed, after Plaintiff submitted a sick call request,

Hemphill evaluated Plaintiff's scalp condition, recommended treatment, and provided treatment. Specifically, Defendants note that Plaintiff was prescribed Selenuim Sulfate shampoo and Hydrocortisone Cream and given those items. Defendants maintain "there is absolutely no evidence to demonstrate that Defendants subjectively knew of and disregarded an excessive risk to Plaintiff's health or safety." Defs' Mot. SJ at 16. Defendants file an affidavit, from another doctor who reviewed Plaintiff's medical records, noting that Doctor Hemphill's recommended course of action met the appropriate standards of medical care. See Defs' Exh. C-2.

Plaintiff's grievances concern the doctor's failure to provide Plaintiff with the Closetasol topical solution, not the failure to provide the Selenuim Sulfate Shampoo or the Hydrocortosine cream. However, nothing in the record demonstrates that Closetasol was ever prescribed for Plaintiff. In fact, in his appeal filed to the Secretary of the Department of Corrections, Plaintiff wrote that "the doctor would be incorrect to order something differently when I clearly explained to him that Closetasol topical solution worked for my condition in the past." Defs' Exh. G (emphasis added). This statement reflects Plaintiff's belief that the doctor should have prescribed the Closetasol, not any other prescriptions. However, an inmate's disagreement over the course of medical action

taken does not arise to a constitutional violation.[6] See Harris, 941 F.2d at 1505 (stating "[n]or does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment."). The record supports the finding that Plaintiff never returned to the medical department for a follow-up visit concerning his scalp. Based on the foregoing, Defendant Hemphill is entitled to judgment as a matter of law.

Likewise, Defendants Coates and Johnson are also entitled to judgment as a matter of law. Plaintiff attributes liability on the Defendants Coates, Johnson, and the former Secretary of the Department of Corrections, James McDonough,[7] in their individual capacities, for their connection with the denial of Plaintiff's grievances concerning his medical needs and Johnson did not investigate the circumstances surrounding his medical needs. Plaintiff claims that Coates "lied" in response to his grievance. Defendant Coates, the Health Services Administrator, states that she never provided direct patient care to inmates, including Plaintiff. Coates Mot. at 2, Aff. Coates at 1-3. Coates avers that her only involvement in the case *sub judice* was that she

---

[6] Notably, for the first time in Plaintiff's Response to the Motion for Summary Judgment, Plaintiff alleges that he was denied the Closetasol for monetary reasons. The Complaint did not contain this allegation.

[7] James McDonough, the former Secretary of the Department of Corrections, has not received service of process. Nevertheless, the Court addresses the claims against McDonough.

reviewed Plaintiff's medical record and honestly reported what was in his records in responding to Plaintiff's grievance. Aff. Coates at 2. In this case, denying Plaintiff's grievance(s) and signing their respective names on the responses, clearly does not amount to a constitutional violation. "[F]iling a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied." Hall v. Santa Rosa C.I., Case No. 3:06-cv-351/RV/EMT, 2007 WL 4674370 *5 (N.D. Fla. Feb. 2007)(quotations omitted). Thus, Defendants Coates and Johnson are entitled to judgment as a matter of law. The Court *sua sponte* dismisses any claims as to the former Secretary of the Department of Corrections.

The current Secretary is also entitled to judgment in his favor. As previously stated, Plaintiff specifically states that the Defendants are sued only in their individual capacities. Any individual capacity claims against the current Secretary cannot stand because the current Secretary was not in that position at the time of the incident *sub judice*. Therefore, the current Secretary did not participate in any alleged constitutional violations. Even if the Court were to liberally construe the Complaint to state an official capacity claim against the Secretary, any official capacity claims fail. To state an official capacity claim against the Secretary of the Department of Corrections, a plaintiff must establish that an official policy of custom of the private entity

was the "moving force" behind the alleged constitutional deprivation. Monell v. Dep't of Soc. Servs., 436 U.S. at 658, 693-694 (1978). The Supreme Court has soundly rejected the possibility of *respondeat superior* as a basis of liability in § 1983 actions. Id. at 690-692. "A policy or custom is established by showing a persistent and widespread practice and an entity's actual or constructive knowledge of such customs, thought he custom need not receive formal approval." Depew v. City of St. Marys, Ga., 787 F.2d 1496, 1499 (11th Cir. 1986). Plaintiff does not allege any custom or policy was the moving force behind the alleged violations.

ACCORDINGLY, it is hereby

**ORDERED**:

1. Defendants' Motion for Summary Judgment (Doc. #38, Mot. SJ.), filed on behalf of Defendants Hemphill and Johnson is **GRANTED** and this matter is dismissed with prejudice as to Hemphill and Johnson.

2. Defendant Coates filed a "Joinder in Defendants' Motion to Dismiss" (Doc. #47) construed as a motion for summary judgment is **GRANTED** and this matter is dismissed with prejudice as to Coates.

3. Walter A. McNeil's, Secretary of the Department of Corrections, "Motion to Adopt and Incorporate the Motion to Dismiss" (Doc. #49) is **GRANTED** and this matter is dismissed as to McNeil. The Court *sua sponte* dismisses James McDonough, the former Secretary of the Department of Corrections.

4. The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this __12th__ day of June, 2009.

*[signature: John E. Steele]*
JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record